IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| American Credit Acceptance, LLC, | : | Case No. 1:12-cv-737 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ENTRY AND ORDER AWARDING |
| | : | DEFAULT JUDGMENT AGAINST |
| Karabe Acceptance, Inc., *et al.*, | : | DEFENDANTS KARABE |
| | : | ACCEPTANCE, INC. AND |
| Defendants. | : | CARZOOOM AUTO CREDIT, LLC AS |
| | : | TO COUNT I OF PLAINTIFF'S |
| | : | VERIFIED AMENDED COMPLAINT |

This matter comes before the Court on Plaintiff American Credit Acceptance ("ACA"), LLC's Motion for Entry of Default Judgment and supporting affidavit. (Doc. 34.) For the reasons that follow, the Court grants in part Plaintiff's motion, enters default judgment against Defendants Karabe Acceptance, Inc. ("Karabe") and CarZooom Auto Credit, LLC ("CarZooom"). The Court awards damages to ACA and against Defendants Karabe and Carzooom, jointly and severally, in the amount of $64,436.90 in principal loan balance; $2,878.49 in interest arrearage through September 26, 2012; and 12% interest per annum on the sum of $64,436.90 from September 26, 2012 until full payment of the principal balance.

**I.     BACKGROUND**

At the time of the events giving rise to the instant suit, Defendant Karabe was in the business of purchasing motor vehicle finance contracts (hereinafter "Consumer Contracts"). (Verified Amended Complaint, Doc. 7 ¶ 9, Page ID # 44.) In order to facilitate the purchase of those contracts, Karabe sought a loan from Plaintiff ACA. On February 15, 2012, Karabe executed and delivered to ACA a promissory note (hereinafter the "Note") whereby Karabe

1

agreed to borrow, and ACA agreed to lend, up to $1,500,000 for the purpose of purchasing the Consumer Contracts. (*Id.* ¶ 10, Ex. A, Page ID # 2–3, 54–55.) On the same day, ACA and Defendants CarZooom, Aaron Muth, and Bryan Metzger entered into a Funding Agreement governing the lending relationship between ACA and Karabe. (*Id.* ¶ 11, Page ID # 45.) Additionally, CarZooom, Muth, and Metzger jointly and severally executed independent guaranties for repayment of the loan. (*Id.* ¶ 12, Page ID # 45.) The Note, Funding Agreement, the guaranties, and other loan documents are collectively referred to herein as the "Loan" or "Loan Agreement."

Pursuant to the Loan Agreement, the collateral for the Loan included, but was not limited to the Consumer Contracts purchased by Karabe, all of the receivables related to the Consumer Contracts, and all of Karabe's interest in the vehicles financed by the Consumer Contracts ("Financed Vehicles"). (*Id.* ¶ 14, Page ID # 45.) ACA holds most or all the original titles to the Financed Vehicles. (*Id.* ¶ 15, Page ID # 45.) Karabe was to act as the servicer for the Consumer Contracts, and as such was required to collect payments made upon the contracts and to hold those funds in trust for ACA. (*Id.* ¶ 16, Page ID # 45.) Karabe also was expected to deliver certain daily, monthly, and other periodic reports to ACA. (*Id.*)

The Loan Agreement described certain events constituting grounds for termination of the agreement, including Karabe's failure to (a) make payments or deposits required by the Loan Agreement, (b) provide the required reports, or (c) perform in any material respect any of the covenants set forth in the Loan Agreement. (*Id.* ¶ 17, Page ID # 45.) Upon the occurrence of any of those events, ACA had the right to terminate all of Karabe's rights and obligations as servicer, to step into the role of servicer and assume the accompanying rights and obligations,

and to declare a termination date and accelerate and declare immediately due and payable the Loan balance.  (*Id*. ¶¶ 19–20, Page ID # 46.)

Between March 2012 and August 2012, ACA documented numerous breaches of the Loan Agreement, including the occurrence of several events triggering the termination provisions.  (*See id.* Ex. B, Page ID # 56–62.)  On August 15, 2012, ACA sent an initial notice of termination to Defendants, setting forth the events of default and giving Defendants a limited time frame to cure said defaults.  (*Id*. ¶ 21, Ex. B, Page ID # 46, 56–62.)  When that time period elapsed, ACA sent another correspondence to Defendants, demanding payment of the full payoff amount of the Loan or, in the alternative, offering to purchase the receivables for the outstanding principal balance of the Loan and to release Defendants from their obligations thereunder.  (*Id*. ¶ 22, Ex. C, Page ID # 46, 63–64.)  In that letter, ACA demanded that Defendants advise of their choice on or before August 24, 2012, and advised that if they failed to do so, ACA would exercise its rights under the Loan Agreement, including but not limited to taking over servicing of the Consumer Contracts.  (*Id*.)  Defendants failed to select an option.  (*Id*.)  Despite those notices, Defendants failed to cure the defaults.  Accordingly, on August 30, 2012, ACA took over as servicer of the Consumer Contracts and notified the individual consumers who were obligated under those contracts to begin remitting payment to ACA instead of Karabe.  (*Id*. ¶¶ 23, 25, Page ID # 47.)

On September 26, 2012, Plaintiff ACA filed suit against Defendants Karabe, CarZooom, Muth, and Metzger.  (*See* Complaint, Doc. 1.)  Shortly thereafter, on October 3, 2012, ACA filed a Verified Amended Complaint (Doc. 7) and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 8).  With the Verified Amended Complaint ACA asserts claims for

3

breach of contract (Count I), injunctive relief (Count II), and declaratory judgment (Count III). (Verified Amended Complaint, Doc. 7 ¶¶ 31–49, Page ID # 47–49.)

Service of the summons and the Complaint was originally attempted via certified mail on September 28, 2012. (*See* Docs. 5, 6.) The record reflects that Karabe and CarZooom were served successfully on October 3, 2012. (Doc. 10.) On October 23, 2012, Karabe and CarZooom filed a Motion to Dismiss or for a Definite Statement. (Doc. 16.) The initial summons sent to Defendants Metzger and Muth were returned unexecuted on October 22, 2013 and November 5, 2012, respectively. (Docs. 13 and 22.) The Clerk's Office reissued the summons as to both Defendants on October 24, 2012 and November 7, 2012, that time attempting service via regular United States Mail. The ordinary mail envelops were not returned as to either Defendant, rendering service effective as of the dates that the Clerk's certificates of mailing was entered on the record as to each Defendant.[1]

On January 11, 2013, the Court held a preliminary pretrial conference at which counsel for ACA and for Defendants Karabe, CarZooom, and Muth were present. During that conference, the Court denied Defendants Karabe and CarZooom's Motion to Dismiss or for a Definite Statement. (*See* Doc. 30.) Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Karabe and CarZooom had fourteen days from the date of that Order, or until January 25, 2013, to file a responsive pleading. To date, none of the Defendants have filed the required responsive

---

[1] Federal Rule of Civil Procedure 4(e)(1) provides that service on an individual may be accomplished by following applicable state law. Ohio Civil Rule 4.l(A)(l)(a) provides for service by United States certified mail. Ohio Civil Rule 4.6(D) provides that if service by certified mail is returned unclaimed, then service may be made by ordinary mail. In that case, the date the answer to the pleading is due is calculated from "the date of mailing as evidenced by the certificate of mailing. . . . Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned." *Id*

pleadings. Upon Plaintiff's motion, the Clerk entered default against Defendants Karabe, CarZooom, and Muth on April 9, 2013.[2] (See Docs. 32, 33.) Thereafter, Plaintiff filed the pending motion for default judgment seeking judgment against those Defendants. Subsequent to the filing of that motion, Defendant Muth filed for bankruptcy (see Doc. 37), resulting in an automatic stay as to Muth only.

## II. LEGAL STANDARD

Plaintiff's Motion for Entry of Default Judgment is governed by Rule 55(b) of the Federal Rules of Civil Procedure, which provides in relevant part:

> Judgment by default may be entered as follows:
>
> (1) **By the Clerk**. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for the amount and costs against that defendant, if the defendant has been defaulted for failure to appear . . .
>
> (2) **By the Court**. In all other cases the party entitled to a judgment shall apply to the Court therefor. . . .

Fed. R. Civ. P. 55(b).

The sequence of procedural steps required of one seeking judgment by default "begin[s] with the entry of a default by the clerk upon the plaintiff's request." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983) (quoting *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). "Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the entry set aside. If that motion is not made or is unsuccessful, and if no hearing

---

[2] Defendant Metzger has been dismissed from this suit pursuant to a settlement agreement. (*See* Doc. 36.)

is needed to ascertain damages, judgment by default may be entered by the court or, if the defendant has not appeared, by the clerk." *Id.*

## III. ANALYSIS

Plaintiff's Motion for Entry of Default Judgment does not specify for which of the three claims asserted in its Verified Amended Complaint it seeks default judgment. However, the relief requested appears to relate solely to Plaintiff's breach of contract claim, Count I of the Verified Amended Complaint. Plaintiff does not request any form of injunctive or declaratory relief in its motion. Accordingly, the Court considers Counts II and III of the Verified Amended Complaint to be abandoned.

Accepting as true the facts set forth in the Verified Amended Complaint and considering the exhibits attached thereto,[3] the Court finds that Defendants Karabe and CarZooom are liable to Plaintiff for breach of contract. Plaintiff requests that the Court enter "judgment against the Defaulting Parties, jointly and severally, in the total amount of $64,436.90 in principal; $2,878.49 in interest arrearage through September 26, 2012; plus 12% interest per annum on the principal balance from September 26, 2012 until paid." (Doc. 34 at 2, Page ID # 146.) In support of its motion, Plaintiff submitted the affidavit of Steve Meyer, the Managing Director of Credit Risk Management for ACA.

---

[3] "Once a default is entered, well-pleaded allegations in the plaintiff's complaint, except those pertaining to the amount of damages, are taken as true." *McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at *3 (E.D. Mich. April 27, 2011) (citing *Alfa Corp. v. Alfa Mortgage, Inc.*, 560 F. Supp. 2d 1166, 1174 (M.D. Ala. 2008)); *see also Trice v. Lake & Country Real Estate*, No. 86–1205, 1987 WL 38852, at *2 (6th Cir. Oct. 29, 1987) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")).

The evidence establishes that as of September 26, 2012, the date upon which ACA filed its original Complaint in this action, the total principal balance due on the Loan after application of all credits was $164,436.90.  (Meyer Aff. ¶ 8, Page ID # 149.)  On October 12, 2012, ACA sold the collateral securing the Loan in an effort to mitigate its damages.  (*Id*. ¶ 9, Page ID # 149.)  The amount paid for the collateral was $100,000.  (*Id*.)  Following the collateral sale, the principal amount remaining due on the Loan is $64,436.90.  (*Id*.)  Pursuant to the Funding Agreement, the interest to be paid on the Loan is the One-Month LIBOR plus 12% per annum, plus 3% more after default.  (*Id*. ¶ 10, Page ID # 149.)  As of September 26, 2012, the interest arrearage was $2,878.49.  (*Id*.)  Although ACA is potentially entitled to more, for ease of calculation, ACA seeks interest of that amount, plus interest at a flat rate of 12% on the lower amount of $64,436.90 from September 26, 2012 until paid in full.

Having determined that Defendants Karabe and Carzooom were timely served and failed to move or otherwise plead in response to Plaintiff ACA's claims, and having carefully considered Meyer's affidavit and the evidence submitted by Plaintiff in connection with the relevant pleadings, the Court finds that Plaintiff has established its right to recover the damages amounts set forth in the motion for default judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Entry of Default Judgment.  The Court **GRANTS** Plaintiff's motion as to Defendants Karabe and CarZooom and **DENIES WITHOUT PREJUDICE** Plaintiff's motion as to Defendant Muth.  **DEFAULT JUDGMENT** is **HEREBY ENTERED** in favor of Plaintiff against Defendants Karabe and CarZoom as to Count I of Plaintiff's Verified Amended Complaint.  Pursuant to the

entry of that judgment, Defendants Karabe and Carzooom are jointly and severally ordered to pay to ACA the sum of $64,436.90 in principal; $2,878.49 in interest arrearage through September 26, 2012; and interest accruing thereafter at a rate of 12% per annum on the sum of $64,436.90 until principal balance is paid in full.

    IT IS SO ORDERED.


    ___s/Susan J. Dlott_____
    Chief Judge Susan J. Dlott
    United States District Court